FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 01, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VAILE BOLEYN on behalf of SUZANNE STRAGA,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | No. 1:16-CV-03154-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

In this case, Plaintiff Vaile Boleyn, appearing on behalf of the estate of her mother, Suzanne Straga, appeals the Administrative Law Judge's (ALJ) decision to again deny benefits following a previous remand order entered by Magistrate Judge Hutton. Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 12 & 14. Plaintiff contends that the ALJ committed many of the same errors identified in Judge Hutton's remand order, including by: (1) rejecting the opinions of Ms. Straga's medical providers; (2) rejecting Ms. Straga's subjective complaints; (3) failing to take expert medical testimony on the question whether Ms. Straga's liver disease became a severe impairment during the relevant period; and (4) failing to provide a hypothetical to the vocational expert at step five that

ORDER **-** 1

accounted for all of Ms. Straga's limitations, ECF No. 12 at 17–18. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds that the ALJ failed to follow the prior remand order's direction to further develop the record by seeking the assistance of a medical expert in determining whether one of Ms. Straga's diagnoses was disabling and in determining Ms. Straga's limitations. Accordingly, the Court grants Plaintiff's motion and remands the ALJ's decision for further proceedings and therefore denies the Commissioner's motion.

## I. STATEMENT OF FACTS[1]

During the relevant period, Ms. Straga suffered from several impairments, including: chronic headaches, Crohn's disease, fibromyalgia, affective disorder, alcohol dependence, and liver disease. Tr. 491. Ms. Straga saw a number of medical providers for treatment of her conditions. Tr. 175–79. Ms. Straga alleged that as a result of her conditions she was unable to engage in virtually any activities and was generally limited to sitting in the dark and listening to the radio or television, although she did drive her daughter to and from school, occasionally shopped and

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

got gas. Tr. 46–48. Her most recent employment, as a parts technician for Kittitas County, ended in February 2008. Tr. 42–43.

## II. PROCEDURAL HISTORY

Ms. Straga filed applications for disability insurance benefits and supplemental security income on September 24, 2009, and March 17, 2010, respectively, alleging disability beginning on February 29, 2008. Tr. 19. Ms. Straga's application for benefits was disapproved by the Social Security Administration on October 20, 2010, and the agency denied reconsideration on June 10, 2011. Tr. 78, 84. Ms. Straga appealed to the Office of Disability and Adjudication Review and, following a hearing, an Administrative Law Judge (ALJ), issued a decision denying benefits on November 16, 2012. Tr. 18–30. Ms. Straga subsequently appealed to the Social Security Appeals Council, which denied review. Tr. 1–4, 15. Ms. Straga filed an appeal in this district in March 2014. Tr. 548–50. Magistrate Judge Hutton remanded for further proceedings. Tr. 489.[2]

Ms. Straga died on October 7, 2014. Tr. 489. Following Ms. Straga's death, her daughter Vaile Boleyn was substituted as claimant. Tr. 515.

---

[2] While her case was pending, Ms. Straga filed a separate application for disability benefits on December 3, 2012, the State issued a favorable determination, finding Ms. Straga disabled, and the Appeals Council affirmed. Tr. 489.

ORDER - 3

On remand the ALJ again denied benefits, concluding that Ms. Straga was not under a disability within the meaning of the Social Security Act from February 29, 2008, through November 16, 2012.

### III. **DISABILITY DETERMINATION**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude

ORDER - 4

substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d

1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## IV. ALJ FINDINGS

The ALJ concluded at steps one and two that Ms. Straga had not been gainfully employed since Februarty 29, 2008, and that during the relevant period she had the following severe impairments: chronic headaches, Crohn's disease, fibromyalgia, affective disorder, and alcohol dependence. Tr. 491. The ALJ found that liver disease was not a severe impairment during the relevant period. Tr. 492. At step three, the ALJ found that none of Ms. Straga's impairments met or medically equaled the severity of a listed impairment. Tr. 492–93. At steps four and five, the ALJ found that Ms. Straga had the residual functional capacity to perform light work with some additional limitations and that, while she was unable to perform her past relevant work given these limitations, jobs existed in significant numbers in the national economy that she could have performed. Tr. 493–500.

## V. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the

record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted).

Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## VI. <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred by (1) rejecting the opinions of Ms. Straga's medical providers, ECF No. 12 at 8–10; (2) rejecting Ms. Straga's subjective complaints in determining her residual functional capacity, ECF No. 12 at 10–14; (3) failing to take expert medical testimony on the question whether Ms. Straga's liver disease became a severe impairment during the relevant period, ECF No. 12 at 14–16; and (4) failing to provide a hypothetical to the vocational expert at step five that accounted for all of Ms. Straga's limitations, ECF No. 12 at 17–18.

**A.  The ALJ properly considered the opinions of Ms. Straga's treating and examining physicians.**

Plaintiff argues that in determining Ms. Straga's residual functional capacity at step four, the ALJ improperly rejected the opinion of Ms. Straga's examining provider, Dr. Ho. ECF No. 12 at 8. Specifically, Plaintiff argues that the ALJ erroneously concluded that Dr. Ho's opinion was based on subjective complaints and was not supported by objective evidence. ECF No. 12 at 9. Plaintiff notes that Dr. Ho's opinion was not based on only self-reported symptoms because Dr. Ho also relied on MRI tests, fibromyalgia testing, and a review of medical records. ECF No. 12 at 9.

The opinion of an examining physician is generally entitled to greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ cannot reject a treating or examining physician's opinion, even if it is contradicted by another physician, without setting forth specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Judge Hutton concluded that the ALJ's decision to give limited weight to Dr. Ho's opinion was not supported by substantial evidence. Tr. 574. Judge Hutton explained that the ALJ incorrectly found that Dr. Ho's opinion was based on Ms. Straga's unreliable self-report, when in fact other evidence in the record confirmed Ms. Straga's fibromyalgia diagnosis, and, significantly, a 2012 MRI result showed

ORDER - 8

atypical trigeminal neuralgia. Tr. 574. Judge Hutton further concluded that the ALJ improperly gave greater weight to the opinions of agency reviewing doctors rather than Ms. Straga's examining and treating doctors. Tr. 575.

On remand, the ALJ set forth specific and legitimate reasons for giving limited weight to Dr. Ho's opinion. Unlike in her previous decision, the ALJ did not rely primarily on a finding that Dr. Ho's opinion was based on Plaintiff's subjective and unreliable complaints and did not conclude that Dr. Ho's objective physical exam findings were normal. Instead, the ALJ cited objective medical evidence in the record supporting the conclusion that Ms. Straga was more functional than determined by Dr. Ho. Tr. 498. Among other things, the ALJ stated that there was no evidence of joint deformity, crepitus, effusion, or paravertebral muscle spasms or tenderness of the lumbar spine; that Ms. Straga had normal strength in the upper and lower extremities bilaterally, normal gait, negative straight leg raise in the seated and supine position, and was able to hop and squat. Tr. 498. Because the ALJ stated specific reasons supported by substantial evidence for giving limited weight to Dr. Ho's opinion, there is no basis for this Court to second guess the ALJ's determination.

Plaintiff argues that the ALJ repeated the error made in her previous decision of "giving greater weight to agency reviewing doctors than to examining doctors Ho and May and treating doctors Murinova and Hebb." ECF No. 12 at 10 (quoting

Tr. 575). But the ALJ's underlying error was not in giving greater weight to the agency reviewing doctors' opinions, it was in failing to provide sufficient reasons for doing so. On remand, the ALJ has remedied this error by thoroughly explaining and citing appropriate evidence in the record to support her decision. Tr. 498–99.

**B.      The ALJ's credibility findings are supported by substantial evidence.**

Plaintiff argues that the ALJ failed to provide valid reasons for rejecting Ms. Straga's subjective complaints. The Commissioner argues that the ALJ's credibility finding is supported by substantial evidence, and may therefore not be second-guessed by this court. ECF No. 14 at 2–3.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester*, 81 F.3d at 834. ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among

others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

Plaintiff argues that the ALJ erred by discrediting Ms. Straga's testimony on the basis of (1) lack of objective findings supporting Ms. Straga's testimony about her fibromyalgia symptoms, which are assessed primarily based on a claimant's subjective symptoms because they elude objective findings; (2) Ms. Straga's daily activities; and (3) Ms. Straga's differing reasons for not working; and (4) Ms. Straga's limited treatment. ECF No. 12 at 11–14.

First, the ALJ did not discredit Ms. Straga's testimony about her fibromyalgia symptoms, and, in fact, appears to have fully credited those symptoms in her residual functional capacity determination. While the ALJ did note that there was a lack of objective medical evidence supporting Ms. Straga's fibromyalgia symptoms, the ALJ nevertheless states that she "fully compensated for the claimant's fibromyalgia complaints in the residual functional capacity." Tr. 496.

Second, the ALJ appropriately considered Ms. Straga's daily activities on remand. Judge Hutton concluded that the ALJ previously erred in relying on Ms. Straga's limited daily activities—driving, shopping, personal care, light housework, and laundry—to discredit her testimony. ECF No. 12 at 13 (citing Tr. 579). Indeed, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would

unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). But in contrast to the previous order, the ALJ here did not rely directly on Ms. Straga's daily activities to conclude that she was capable of working. Instead, the ALJ notes that Ms. Straga's daily activities are inconsistent with her other testimony about the effect of her symptoms (i.e. that she stayed in a darkened room all day due to disabling headaches). Tr. 497. And the ALJ acknowledges that "[t]hese activities alone do not establish an ability to maintain full-time employment. Rather they reflect on the reliability and accuracy of the claimant's self-reported limitations and abilities." Tr. 497.

Next, the ALJ does not appear to rely heavily on either differing reasons for stopping work or failure to seek treatment. Instead, as part of the ALJ's extensive discussion of Ms. Straga's alleged symptoms the ALJ notes that conflicting statements about why Ms. Straga stopped working reflect on the reliability and accuracy of her testimony, and that during one year in the relevant period Ms. Straga had limited medical visits despite reports of intense pain. Tr. 495, 498. Importantly, the ALJ does not appear to directly draw any conclusion based on the lack medical visits.

Finally, and most importantly, the ALJ provides an extensive discussion of Ms. Straga's symptoms and the medical evidence and gives numerous other reasons for doubting the alleged severity of some of her symptoms besides those noted above. Tr. 493–98. The ALJ does not rely on any one factor alone to discredit her testimony. Among other things, the ALJ found that Ms. Straga's headaches improved with treatment, that her Crohn's disease was well controlled by diet, and that there were significant discrepancies in her statements about drug and alcohol use. Tr. 495–98. Further, the ALJ did not fully discredit Ms. Straga's symptom testimony, and instead considered limitations from each of her impairments in determining residual functional capacity. Tr. 495–96, 99.

**C.     The ALJ failed obtain the assistance of a medical expert.**

Judge Hutton found that the record was unclear whether a 2012 diagnosis relating to Ms. Straga's MRI resulted in severe impairments, and therefore remanded for further proceedings "with the assistance of a medical expert to help the ALJ make this determination." Tr. 580. Plaintiff argues that, in light of this direction and SSR 83-20, the ALJ should have obtained the services of a medical expert. ECF No. 12 at 15. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998); *Morgan v. Sullivan*, 945 F.2d 1079, 1083 (9th Cir. 1991). Plaintiff also argues that medical expert testimony was necessary to determine the onset of Ms. Straga's liver disease. ECF No. 12 at 16.

1   The Commissioner argues that the record contains new evidence from a
2   medical expert, Dr. Olegario Ignacio Jr., on the subject of Ms. Straga's
3   impairments. ECF No. 14 at 7. Dr. Ignacio found that Plaintiff's liver disease
4   equaled the severity requirements for disabling chronic liver disease based on
5   findings in January and February 2013. Tr. 558. The Commissioner argues,
6   however, that the findings do not show that Ms. Straga's condition was disabling
7   during the period under the ALJ's consideration here. ECF No. 14 at 7.

8   The problem with the Commissioner's argument is that Dr. Ignacio's analysis
9   expressly does not consider the time period relevant to this case; he considered only
10  whether she had severe impairments after the alleged onset date in her subsequent
11  application for disability benefits that is not at issue here. Tr. 555–58. Further, Dr.
12  Ignacio did not address the questions that Judge Hutton directed the ALJ to seek the
13  assistance of a medical expert in answering. Judge Hutton directed the ALJ to obtain
14  the assistance of a medical expert in determining whether Ms. Straga's atypical
15  trigeminal neuralgia diagnosis, based on a February 2012 MRI, caused severe
16  limitations during the relevant period, Tr. 580, and on whether the ALJ's findings
17  on Ms. Straga's limitations are appropriate, Tr. 581. There is no indication that the
18  ALJ considered additional medical-expert opinions on either of these questions.
19  Accordingly, the ALJ's residual functional capacity determination and step-five
20

determination that jobs were available that Ms. Straga could perform remain unsupported by substantial evidence.

**D. The ALJ failed to meet the burden of showing that jobs were available in significant numbers in the national economy that Ms. Straga could perform.**

Plaintiff argues that the vocational testimony on which the ALJ relied lacked evidentiary value because it was based on a hypothetical that did not reflect all of Ms. Straga's limitations. ECF No. 12 at 17. As discussed above, because the ALJ failed to consult a medical expert for assistance in determining Ms. Straga's limitations, the ALJ cannot rely on the vocational expert's conclusion that jobs existed in the national economy that Ms. Straga could perform. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) ("If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").

**E. The appropriate disposition is to remand for further proceedings.**

Plaintiff argues that if the Court finds that the ALJ erred it should reverse and remand for payment of benefits because this has already been remanded once. ECF No. 12 at 19. Generally when a court of appeals reverses an administrative determination, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *INS v. Ventura*, 537 U.S. 12,

ORDER - 15

16 (2002) (per curiam) (citations omitted). However, in appropriate circumstances a court may remand with instructions to calculate and award benefits. *Garrison*, 759 F.3d at 1019 (collecting cases). Remand for payment of benefits may be appropriate where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020; *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (crediting claimant's testimony and treating physician's opinions as true, the record clearly established that claimant could not perform a sedentary job or any other gainful work that exists in the national economy).

It is troubling that the ALJ failed to follow the clear guidance of the previous remand order, and the result is inequitable, especially because this case has already been remanded once before. *See Benecke*, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits . . . .") But equity is an insufficient basis by itself for directing payment of benefits on remand. *See Garrison*, 759 F.3d at 1019 (noting that inequity can strengthen, but not control, the case for remand for payment of benefits). Here, the ALJ's error was not in failing to give sufficient

reasons for discrediting testimony or opinions. As explained, on remand the ALJ corrected any such errors made in her first decision. Instead, the ALJ's error was failing to obtain the assistance of a medical expert in determining whether a certain diagnosis was disabling and whether the ALJ properly determined Ms. Straga's limitations. In this circumstance it is not possible to conclude that the record is fully developed or that it is clear from the record that Ms. Straga is entitled to benefits. Accordingly, remand for further development of the record is necessary.

## VII. CONCLUSION

Accordingly, for the reasons discussed, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. This matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this order. On remand, the ALJ shall:

    *A.* Obtain the assistance of a medical expert in determining whether Ms. Straga's atypical trigeminal neuralgia diagnosis, based on a February 2012 MRI, caused severe limitations during the relevant period; and

  ***B.***  Obtain the assistance of a medical expert in determining the extent of Ms. Straga's functional limitations.

**4.** **JUDGMENT** is to be entered in Paintiff's favor.

**5.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 1st day of August 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 18